UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:   Beth M. Squire,

Case No.  13-62070
Chapter 7

Debtor.

Memorandum-Decision and Order Finding Willful Violation
of the Automatic Stay and Awarding Damages

This matter is before the court on motion of Beth M. Squire ("Debtor") brought pursuant

to 11 U.S.C. § 362(k)[1] for an order finding that Berkshire Bank ("Berkshire") willfully violated

the automatic stay and seeking damages including attorneys' fees. Berkshire opposes the motion.

A hearing was held on March 6, 2014, at which James F. Selbach, Esq. appeared on behalf of the

Debtor and Louis Levine, Esq. appeared on behalf of Berkshire. At the conclusion of the hearing,

the court found that Berkshire had violated the automatic stay on January 30, 2014 but limited

damages to $199.53 – the amount which Berkshire had previously remitted to Debtor's counsel

on February 14. This memorandum-decision and order sets forth the court's findings of fact and

conclusions of law underlying the court's ruling.

*Background Facts*

The facts of this matter are straightforward. Debtor filed this case on December 31, 2013.

At the time of filing, Debtor had an unsecured loan with Berkshire which she had set up through

the Automated Clearing House ("ACH") network for automatic monthly payments of principal

and interest from her account at Citizens Bank (hereinafter, "ACH payments"). The ACH

payments were deducted from Debtor's bank account on the 30th day of each month. Berkshire

acknowledges that it received notice of the commencement of the case and noted the Debtor's

---

[1]Hereinafter, all sectional references are to the United States Bankruptcy Code at 11 U.S.C. §§ 101-1532 ("Code").

bankruptcy and her bankruptcy counsel's name and telephone number in Debtor's file on January 3, 2014.

On January 14, an employee of Berkshire telephoned Debtor's counsel, James Selbach, to inquire if the Debtor wanted the ACH payments to continue and left the specific message on his voicemail with information for a return call. In his attorney affirmation executed on March 4, 2014, Mr. Selbach indicates that on January 14, 2014, he tasked his legal assistant to contact the Debtor. Without specifying the date, Mr. Selbach affirms that sometime after January 14 but before January 30: "Legal assistant speaks with client concerning intentions." (Doc. 31 at ¶4.) At the hearing, Attorney Selbach acknowledged that he received Berkshire's message on his voicemail but never returned the phone call nor did his office otherwise respond to Berkshire's inquiry as to discontinuance of the ACH payments.[2]  Attorney Selbach stated that it is not unusual for debtors to want to continue ACH payments on a loan for various reasons including, for example, when there is a non-filing co-debtor on a loan, the loan is secured, or a loan is to be reaffirmed. Attorney Selbach indicated that it is his practice to instruct clients at the outset of filing bankruptcy to affirmatively communicate with any financial institution if they wish to have ACH payments continue so as not to interrupt the flow of payments.

Sixteen days after Berkshire initiated contact with Debtor's counsel, on January 30, 2014, an attempted $199.53 ACH transfer from Debtor's Citizens Bank account to Berkshire failed due to insufficient funds in Debtor's account, for which Debtor was assessed a $35.00 service charge.[3] At 12:55 p.m. that same day, Debtor's counsel filed the subject motion, supported by counsel's boilerplate memorandum of law seen frequently in support of like motions brought by

---

[2] Debtor's counsel stated on the record that he gave the message to a paralegal in his office to call the Debtor but that there was delay in being able to reach the Debtor, a school teacher.

[3] At the time of the attempted ACH transaction, Debtor's bank account had a negative balance of $-4.48. Citizens Bank had previously honored an $8.00 check that the Debtor had written which overdrew the account and resulted in a $35.00 service fee. ( Ex. A to Debtor's Affidavit sworn to on March 5, 2014 filed as Doc. 32.)

Attorney Selbach in other cases before this court.[4] Among other recitals, the attorney's affirmation in support of the motion states: "On January 30, 2014 Berkshire took...($199.53) from the Debtor's bank account,...causing the account to have a negative balance. This confused the Debtor and obviously caused a great inconvenience. Debtor has suffered actual damages in the form of emotional distress." (Doc. 16 at ¶¶6 and 7.)

Under cover of letter dated February 14, 2014, Berkshire forwarded a check in the amount of $199.53 to Debtor's counsel, which counsel acknowledged to have in his possession at the hearing. After an internal accounting review, Berkshire later ascertained that no money had ever been transferred from Debtor's Citizens Bank account to Berkshire on January 30, 2014 because of the negative balance in Debtor's account. Instead, the $199.53 credited on that date on Debtor's unsecured loan originated from an advance from Berkshire's own general ledger account, which would have been reimbursed but for the failed ACH transaction. Nevertheless, Debtor's counsel has the tendered $199.53 of Berkshire's funds.

*Analysis of Arguments and Applicable Law as to Stay Violation*

Debtor's counsel argues that (i) Berkshire violated the automatic stay when it did not terminate the ACH payments upon learning of the bankruptcy case; and (ii) his client suffered injury in the form of actual damages of $199.53, plus a $35.00 service charge, and emotional distress. Berkshire responds that (i) Debtor's counsel could have averted the attempted ACH payment and the necessity of this motion by simply returning Berkshire's phone call; and (ii) Debtor's damages are otherwise $35.00. Berkshire claims that its actions were neither willful nor intentional but resulted from an aberrant mistake made by an employee. Berkshire offers no

---

[4] Attorney Selbach frequently appears before this court on matters involving violations of the automatic stay and the discharge injunction in cases he has filed as well as in the role of special counsel in cases filed by other debtor-counsel practitioners. In 2013, Attorney Selbach filed in this District 43 motions alleging violations of the automatic stay or discharge injunction. For the first 3 months of this year, he has filed 22 such motions.

explanation as to why the ACH payments were not terminated immediately upon learning of the bankruptcy filing other than to suggest that the Debtor's unsecured loan was mistakenly processed in a manner reserved for secured loans. Berkshire recognizes that the Debtor's loan is unsecured. According to Berkshire, its practice has been to inquire as to continuing ACH payments postpetition only as to those debtors whose loan obligations are secured.

Immediately upon commencement of a bankruptcy case, Code § 362(a)(6) imposes an automatic stay, applicable to all entities, of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case... ." As defined in the Second Circuit, a willful violation of the automatic stay occurs when a creditor "knows of the filing of the petition (and hence of the automatic stay), and has the general intent simply to perform the act found to violate section 362; no specific intent to violate section 362 is necessary." *Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 82 (2d Cir. 2013).

As indicated by its own records, Berkshire knew of the Debtor's bankruptcy filing as of January 3, 2014, and by its passivity—including its failure to get an affirmative response from the Debtor through her counsel—allowed the ACH payments to continue. The court finds that Berkshire willfully violated the stay when the January 30 ACH transaction was automatically presented against Debtor's account. Notwithstanding the failure to actually collect any payment, its failure to timely terminate the ACH payments constituted an attempt to collect on a prepetition debt at a time when the automatic stay was in place. *See In re Hellums*, 772 F.2d 379 (7th Cir. 1985) (holding that in the absence of any positive indication that the debtor intended to repay a prepetition debt, creditor violated the automatic stay when it continued postpetition an automatic payroll deduction that was applied to pay a prepetition loan).

4

Debtor's counsel argues that Berkshire's violation occurred prior to Berkshire's call to Debtor's counsel on January 14, 2014 by its failure to terminate the ACH payments prior to that date. The court disagrees. There was still time for Berkshire to terminate the ACH payments had it received a timely negative response to its January 14 inquiry, or, after having received no response, before the anticipated January 30 deduction. This is not a case in which a creditor has imposed prepetition an involuntary garnishment of a debtor's wages. The court draws a distinction between the alacrity required of a creditor to reverse a garnishment that a debtor cannot undo and that required to reverse an ACH payment which a debtor voluntarily set in place and can terminate at will. In light of standard procedures governing financial institutions, the process to terminate an ACH payment is far more streamlined and expedient than the process required to terminate a wage garnishment. Additionally, this ACH payment was a monthly deduction, as opposed to most wage deductions which, in tracking paydays, often occur on a weekly or bi-weekly basis.

The court also rejects Debtor's argument that by Berkshire placing a call to Debtor's counsel to determine if the Debtor desired to have the ACH payments continue, it committed a *per se* violation of the automatic stay. While the automatic stay puts a kibosh on postpetition collection activities, it should not be interpreted to eliminate appropriate civil discourse regarding postpetition financial intentions. Debtor cites no authority to support the position that a creditor may not freely inquire of a debtor's counsel regarding a debtor's intention with respect to a particular obligation. To the contrary, the Seventh Circuit has ruled that a non-coercive letter regarding reaffirmation of an unsecured obligation sent to a debtor's counsel with a copy to the debtor did not violate the automatic stay. *In re Duke*, 79 F.3d 43, 45 (7th Cir. 1996) ("The option of reaffirming would be empty if creditors were forbidden to engage in any

5

communication whatsoever with debtors who have pre-petition obligations."). The free flow of information between a creditor and counsel for a debtor should be encouraged and not discouraged for the system to function properly. Accordingly, Berkshire did not willfully violate the automatic stay simply by calling Debtor's counsel to inquire about the Debtor's intentions regarding the ACH payments.

*Damages*

The court finds that Berkshire willfully violated the stay when it attempted the ACH transfer postpetition. Code § 362(k)(1) mandates that a debtor injured by a willful violation of the stay "shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." The Debtor seeks actual damages, including emotional distress damages and attorneys' fees. The Debtor does not seek punitive damages.

The record establishes that Debtor's only pecuniary loss was $35.00 for the service fee charged by Citizens Bank. To compensate the Debtor for this loss, the court awards $35.00 as actual, pecuniary damages.

Typical of counsel's motions, the current motion includes a prayer for emotional distress damages. Case law in this district has recognized that emotional distress damages are recoverable for stay violations when appropriate. *See In re Ficarra*, Case No. 00-62714 (Bankr. N.D.N.Y. April 17, 2002)(Gerling, B.J.); *In re Griffin*, 415 B.R. 64, 68 (Bankr. N.D.N.Y. 2009). Based upon the record, the court concludes that this is not such a case. The court focuses on the events that Debtor asserts caused her the alleged emotional distress. Debtor asserts that Berkshire's "unexpected deduction" of $199.53 "hindered" her "by causing the account to have a negative balance", "confused" her, and "obviously caused a great inconvenience." (See Doc. 16 at ¶6.) The record, however, contradicts these assertions. The negative balance and any inconvenience

were in fact due to Debtor writing a check which overdrew her account. Berkshire took no money out of her account, and it was not Berkshire that caused the Debtor's account to become overdrawn.

As a school teacher in the Syracuse City School District, the debtor is, obviously, an educated person with some degree of savvy. When Debtor executed counsel's retainer agreement—which provides that counsel's quoted fee does not cover motions for violation of the automatic stay[5], surely counsel explained to the Debtor what those motions entailed and, given counsel's specialized practice in this area, that the Debtor would have recourse against an offending creditor. The court accepts Attorney Selbach's statement that his office had reached the Debtor some time before January 30 to alert her that Berkshire had inquired about continuing the ACH payments. Debtor was watchful of her account and states that upon seeing the automatic deduction attributed to the Berkshire debt, "I immediately contacted [m]y (sic) attorney to notify him of this event." (Affidavit of Debtor sworn to March 5, 2014. Doc. 32). The subject motion was filed within a few hours of that contact. The timing of these events suggests that the Debtor was poised to watch for the ACH payment and that it was not "unexpected" nor the source of confusion. Under the circumstances, any claim for emotional distress damages is denied.

The court now turns to the damages component of attorneys' fees. The factual inaccuracies contained in Debtor's pleadings cause this court considerable concern. Equally troubling is the not insignificant contribution by Debtor's counsel to the matter *sub judice*. From the filed forms which accompanied Debtor's voluntary petition, counsel could have readily confirmed that Berkshire's obligation is unsecured (Schedule F), that there is no co-debtor

---

[5] *See* Form B203, Disclosure of Compensation of Attorney for Debtor, accompanying the petition at Doc. No. 1.

7

involved (Schedule H), and that the Debtor did not intend to reaffirm the obligation (Official Form 8). Within the time that counsel took to write down his notes and task his paralegal with contacting the client, counsel could have picked up the phone and communicated to Berkshire to terminate the ACH payments.

Notwithstanding Berkshire's misguided inquiry, it would, in this court's opinion, have been better practice for counsel to have returned the phone call and nipped in the bud the events which followed. This court emphasizes that counsel did not have an affirmative obligation to do so, nor, by virtue of Berkshire's phone call, did the burden shift to the Debtor to terminate the ACH payments. However, in this court's opinion, when presented with a clear opportunity to intervene and preclude aggravation and potential emotional distress to one's client, good advocacy suggests that counsel intervene. By electing not to return Berkshire's phone call, Mr. Selbach does not negate the creditor's ultimate violation. At the same time, this court will not reward tactics intent upon generating anticipated attorneys' fees.

It is against this backdrop that the court analyzes Mr. Selbach's request for actual damages in the form of attorneys' fees. Courts have recognized that attorneys' fees recoverable under § 362(k) must be reasonable and necessary. In *In re Prusan*, 495 B.R. 203 (Bankr. E.D.N.Y. 2010), Chief Bankruptcy Judge Carla Craig collects cases that wrestle with reasonableness factors that temper the award of fees. Included in this category is *Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery, PC)*, No. 1:03CV896, 2005 WL 357207, at *1 (N.D.N.Y. Feb. 11, 2005), *aff'd*, 172 F. App'x 339 (2d Cir. 2006). "[A]n 'excessively litigious approach' to violations of the automatic stay that do not cause damages in an[d] of themselves must be guarded against." *Id.* at n. 4 Even in the face of a willful violation of the stay, the denial of attorneys' fees "will be justified where litigation is not

8

'reasonable and necessary to vindicate [the debtor's] rights or the congressional policies underlying § 362(k).'" *In re Sturman,* 10 CIV. 6725 RJS, 2011 WL 4472412, *4 (S.D.N.Y. Sept. 27, 2011) (quoting *In re Beebe,* 435 B.R. 95, 102 (Bankr. N.D.N.Y. 2010)).

Code § 362(k) was enacted "[t]o preserve the integrity of the automatic stay provisions and to protect consumer debtors and creditors[.]" *In re Flack,* 239 B.R. 155, 162 (Bankr. S.D. Ohio 1999). This court has often recognized the important deterrent effect that active enforcement of § 362(k) plays in keeping creditors mindful of the automatic stay provisions and in curtailing all collection activities. At the same time, this court has admonished Mr. Selbach in the past to exercise a fair amount of discretion and good judgment in bringing motions for violations before the court.

Code § 362(k) was not designed to encourage a debtor or her counsel to lay in wait until a violation occurs and then pounce upon the creditor. It is the opinion of the court that litigation over this violation–which caused minimal damage–should have ended before it started. Counsel may counter that it was not until the present motion was filed that Berkshire terminated the ACH payments going forward and paid $199.53 over to counsel. However, given counsel's frequent refrain that it takes a sanctions motion to get a creditor's attention, there is an irony not lost on the court that when, in the present instance, this creditor reached out to get debtor-counsel's attention, the response came by motion alleging a violation.

Counsel asserts that his standard rate is $275.00/hour.[6] Counsel's standard two-page affirmation comprising the motion filed on January 30, 2014, accompanied by his boilerplate memorandum of law that is frequently filed with similar motions should reasonably have taken

---

[6] The court takes judicial notice of an attorney affirmation filed by Attorney Selbach dated December 11, 2013, filed as Doc. No. 55 in Case No. 13-31058 in which counsel states: "My standard rate equals $275.00 per hour." For purposes of this decision, the court accepts counsel's asserted hourly rate of $275.00, although given the misstatements of fact contained in counsel's pleadings underlying the motion, a lower hourly rate of no more than $150.00/hour would seem more appropriate, if any fees are warranted.

9

no more than thirty minutes to prepare. Apart from tailoring the affirmation by specifically referring to the creditor as Berkshire and inserting the specific date that this case was commenced, the numbered paragraphs of the affirmation contain identical language to similar motions filed in this court. The one exception is paragraph 6 which, in its specific recitals, misstates the operative facts.

The court limits damages to $199.53, the amount remitted to Debtor's counsel by Berkshire under cover letter dated February 14. That award is allocated as follows: (i) actual damages to the Debtor of $35.00; (ii) fees to counsel of $137.50; and (iii) the balance to counsel as costs.[7] Upon Berkshire's tender of $199.53 to Debtor's counsel on February 14, the court finds that Debtor and her counsel were fully compensated for the injury caused by Berkshire's willful violation of the stay. Since no further attorney services were needed or warranted at that time, the court finds that Debtor-counsel's further litigation time and expenditures from that date forward are not compensable.

To avoid any future violations of the automatic stay, the court instructs Berkshire to review its policy going forward to timely terminate ongoing ACH transactions.

So Ordered.

Dated: March 26, 2014
   Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge

---

[7] The balance of $27.03 covers the cost of service of the motion by certified, first class mail via the United States Postal Service upon Berkshire as well as a nominal cost for photocopies of the initial pleading.